UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| Fraser Engineering Company, Inc. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:17-CV-102-JD |
| | ) | |
| IPS-Integrated Project Services, Inc. and | ) | |
| Lonza Biologics, Inc. | ) | |
| | ) | |
| Defendants. | ) | |

**FRASER ENGINEERING COMPANY, INC.'S MOTION TO COMPEL PRODUCTION
OF AN UNREDACTED COPY OF THE PRIME CONTRACT AND
REQUEST FOR A HEARING**

Plaintiff, Fraser Engineering Company, Inc. ("Fraser" or "Plaintiff") hereby moves to

compel the Defendants IPS-Integrated Project Services, LLC ("IPS") and Lonza Biologics, Inc.'s

("Lonza") (collectively "Defendants") to produce an unredacted copy of the Engineering,

Procurement, and Construction Management Agreement between IPS and Lonza (the "Prime

Contract"). Fraser requests that the Court schedule a hearing regarding Fraser's Motion to

Compel. In support thereof, Fraser states the following.

I.    **FACTS**

**Procedural History**

1.      Lonza is the owner of the building located at 101 International Drive, Portsmouth,

NH (the "Property") pursuant to a sublease agreement with the Pease Development Authority

dated April 8, 1993. Complaint ¶ 8.

2.      Lonza hired IPS to provide construction management and design/build

construction services for a capital improvement project on the Property (the "Project").

Complaint ¶ 7.

3.      On September 8, 2014, Lonza and IPS entered into the Prime Contract to provide the aforementioned services.  A copy of the Prime Contract is attached as <u>Exhibit A</u> to the Second Affidavit of Seth M. Pasakarnis ("Second Pasakarnis Aff.").

4.      IPS engaged Fraser as a subcontractor pursuant to a construction contract effective February 11, 2016 (the "Subcontract").  Complaint ¶ 10; <u>See</u> Subcontract, Fraser Hearing Exhibit 1-1.

5.      As required by IPS, the Subcontract incorporated all of the terms and language of the Prime Contract:

> ALL WORK required to be performed hereunder by SUBCONTRACTOR [Fraser] shall be in strict accordance with the SUBCONTRACT Documents applicable to the WORK to be performed and materials, articles and/or equipment to be furnished hereunder.  **SUBCONTRACTOR shall be bound to** CONSTRUCTION MANAGER [IPS] by **the terms of** this SUBCONTRACT and of **the PRIME CONTRACT between the OWNER [Lonza] and CONSTRUCTION MANAGER** and shall assume toward CONSTRUCTION MANAGER all of the obligations and responsibilities with respect to the WORK to be performed hereunder by SUBCONTRACTOR which CONSTRUCTION MANAGER, by the PRIME CONTRACT, assumes toward the OWNER. Notwithstanding that specific WORK set forth in the PRIME CONTRACT is not described or specified in the SUBCONTRACT, SUBCONTRACTOR shall perform all WORK normally construed to come within the scope of his activities, as required by the CONSTRUCTION MANAGER under the PRIME CONTRACT…

Subcontract, Fraser Hearing Exhibit 1-1, § 12.1. (Emphasis added).

6.      The top of every page of the Subcontract refers to the Prime Contract: "Form of Subcontract Agreement (New Hampshire) Form Date August 2015 (Pursuant to Owner/Construction Manager Prime Contract)."

7.      The Subcontract also references the Prime Contract throughout.  <u>See</u> <u>§ 1.9</u> ("The term PRIME CONTRACT refers to the Agreement by and between OWNER and CONSTRUCTION MANAGER."); <u>§ 2.11</u> (requiring Fraser to make equipment available to IPS

to perform the scope of work in the Prime Contract); § 2.13 (IPS may not deviate from the Prime Contract when reviewing Fraser's submittals); § 2.15 (referring to the Prime Contract); § 3.2 ("Notwithstanding the foregoing, if the Prime Contract is at variance with granting such time extension, than (sic) the provisions of the Prime Contract shall control"); § 3.3 (making Fraser responsible for liquidated or other damages that may be assessed against IPS by Lonza pursuant to the Prime Contract); § 4.4 (referring to the Prime Contract payment requirements); § 15.2 (Fraser "further agrees to comply with all of the provisions of the PRIME CONTRACT pertaining" to discrimination laws).

8.      On January 26, 2017, Fraser filed its Verified Motion for Ex-Parte Attachment to Perfect Mechanic's Lien on the Property pursuant to RSA 447.  That same day, the Court granted Fraser's motion and Fraser recorded its mechanic's lien attachment.

9.      On March 23, 2017, IPS and Lonza filed Objections to Fraser's Ex-Parte Mechanic's Lien Attachment and requested a hearing.[1]

10.     On March 29, 2017, the Court set a hearing date of May 11, 2017 concerning IPS and Lonza's Objections to Fraser's Ex-Parte Mechanic's Lien Attachment.

11.     Understanding that several of the terms of the Prime Contract may have an effect on the lien determination, on March 22, 2017, in preparation for the hearing, undersigned counsel, on behalf of Fraser, emailed IPS's counsel and requested a copy of the Prime Contract. Second Pasakarnis Aff. ¶ 2.  Opposing counsel responded that he had requested it from his client. Id.

---

[1] Prior to removal, IPS filed a similar objection in the New Hampshire Superior Court for the County of Rockingham on March 2, 2017.

12.     On March 23, 2017, undersigned counsel emailed IPS's counsel again, requesting a copy of the Prime Contract.  Second Pasakarnis Aff. ¶ 3.  Opposing counsel responded that there "are some confidentiality provisions and they are working through that issue." Id.

13.     On March 27, 2017, undersigned counsel emailed IPS's counsel again, requesting an update on when he would produce the Prime Contract.  Second Pasakarnis Aff. ¶ 4.

14.     On March 29, 2017, Lonza's counsel emailed undersigned counsel indicating that the Prime Contract was "being reviewed internally to ensure proprietary information is appropriately protected." Second Pasakarnis Aff. ¶ 5.

15.     On March 29, 2017, Attorney Ronald Ciotti, on behalf of Fraser sent an email to Lonza's counsel, Attorney Chris Hilson, explaining that Fraser takes the position that no portion of the Prime Contract should be redacted as the entire un-redacted Prime Contract was incorporated into its Subcontract.  Moreover, Attorney Ciotti noted that if any portion was redacted due to confidentiality concerns, a privilege log needed to be provided.  Attorney Hilson and Attorney Ciotti confirmed Fraser's concerns and requests in a telephone conference the same day.

16.     As of May 11, 2017, the date of the hearing, Fraser still had not received a copy of the Prime Contract.

17.     During the hearing, Fraser's counsel explained to the Court the importance of the Prime Contract.  Counsel explained why it was critical to know the Prime Contract's:  1) amount; 2) retention terms; 3) retention percentage; 4) type of delivery method; 5) payment method; 6) notice requirements; or, 7) other yet unknown terms.  Counsel explained that these terms are critical in making determinations relating to the lien based on IPS' and Lonza's

representations and arguments outlined in their Objection to the Lien and those made at the time of the hearing.

18.     During the hearing, Lonza's counsel represented to the Court that it had redacted portions of the Prime Contract and had attempted to send the Prime Contract by email to Fraser's counsel the evening before the hearing.

19.     Fraser's counsel did not receive that email or the Prime Contract, nor did Attorney Callaghan for IPS, who Fraser learned after the hearing was also copied on the email.

20.     On May 15, 2017, after the hearing, Lonza's counsel transmitted a redacted copy of the Prime Contract to Fraser's counsel without a privileged log or explanation for the basis of the redactions.  Second Pasakarnis Aff. ¶ 6.  The redacted Prime Contract is attached to the Second Pasakarnis Aff. as <u>Exhibit A</u>.

<u>Nature of the Redactions to the Prime Contract</u>

21.     There is no legal basis for Lonza's redactions.  The information redacted cannot be considered confidential, privileged, or proprietary information.

22.     Lonza's redactions relate to basic business and commercial details of the transaction, which also happen to be highly relevant to the issues in dispute.  Lonza's redactions include the following:

- **§ 1.3 –** Redaction of what appears to be a Contract Document or another agreement between Lonza and IPS pertaining to the Project (Page 2).

- **§ 2.6.3 –** Redaction of the amount Lonza is entitled to deduct from IPS's compensation if IPS assigns its workforce to other projects (Page 5).

- **§ 5.4.5 –** Redaction of the amount of retention Lonza may withhold from IPS's monthly payment requisitions for work performed by subcontractors (Page 12).

- **§16.7 –** Redaction of notice requirements, including email addresses of key project participants (Pages 40-41).

5

- **Exhibit 1 and 2 –** Redaction of information concerning the design and scope of work (Pages 49-51).

- **Exhibit 4 –** Redaction of the entire project budget (Page 54).

- **Exhibit 5** –

  - Redaction of the commercial terms, including the makeup of IPS's compensation (Page 55).
  - Redaction of the contractor's individual commitments that in excess of such amount would have to be approved in advance by Lonza (Page 55).
  - Redaction of the amount of retainage withheld by Lonza from IPS (Page 55).
  - Redaction of payment terms for Trade Work and Site General Conditions (Page 56).

- **Exhibit 6 –** Redaction of IPS's key personnel (Page 57).

- **Exhibit 12 -** Redaction of Contractor's Representative, who is permitted to make binding decisions on behalf of IPS (Page 64).

- **Exhibit 13 -** Redaction of Owner's Representative, who is permitted to make binding decisions on behalf of Lonza (Page 65).

II.   **LEGAL ANALYSIS**

    A.   **IPS and Lonza Have The Burden of Proof Concerning Their Objections to Fraser's Mechanic's Lien.**

23.     IPS and Lonza contend that Fraser's Mechanic's lien should be reduced or discharged because (1) Fraser allegedly failed to provide notice of its claim(s), (2) the mechanic's lien allegedly exceeds the amount due from Lonza to IPS, and (3) the lien includes disputed change orders and unpaid retainage.  See IPS and Lonza's Objections.

24.     IPS and Lonza have the burden of proof with respect to each of these arguments. As described in Fraser's reply, IPS and Lonza have failed to meet their burden.

        i.   Lonza redacted portions of the Prime Contract concerning notice requirements and the identity of key project personnel

25.     Fraser's Reply identifies disputed facts regarding notice, the amount due or which may become due to IPS, and disputed change orders and unpaid retainage.

26.     With respect to notice, Fraser offered exhibits at the hearing clearly showing that IPS and Fraser were provided with notice of Fraser's labor inefficiency as early as December 2015.  See Fraser's Hearing Exhibits 1-2 through 1-9.  Fraser's notice to IPS and Lonza is a relevant and disputed issue of material fact.  As further described herein, Lonza redacted portions of the Prime Contract concerning notice requirements and the identity of key project personnel.

ii.  Lonza redacted retainage, the project budget, and the payment terms from the Prime Contract.

27.     With respect to the amounts due to IPS (or which may become due to IPS), Fraser provided evidence that Lonza was entitled to withhold retainage from IPS (customarily 5-10% of the total contract amount).  Fraser also offered evidence that if the Prime Contract was a "Cost Plus Fee" arrangement, the entire amount of Fraser's claim may be passed through to Lonza. The amount of retainage, the project budget, and the payment terms in the Prime Contract are relevant and disputed issues of material fact.  Despite this fact, Lonza redacted retainage, the project budget, and the payment terms from the Prime Contract.

28.     With respect to disputed change orders and unpaid retainage, Fraser presented evidence indicating that IPS actually directed Fraser to perform the work that is the subject of disputed change order requests, that Fraser billed for its retainage, and that IPS has wrongfully refused to pay Fraser its retainage.  Lonza redacted portions of the Prime Contract identifying amounts up to which IPS may bind Lonza, personnel authorized to act on behalf of IPS and Lonza, and payment terms (which may discuss retainage).

29.     As discussed below, Lonza failed to produce a copy of the Prime Contract prior to Fraser filing its Reply.  Therefore, Lonza and IPS were well aware of Fraser's arguments before it redacted the Prime Contract.  Lonza's redactions do not concern trade secrets, confidential, or proprietary information.  The only basis for Lonza's redactions is that the information directly addresses the arguments raised by Fraser in its Reply.  There is no legal basis for Lonza's redactions.

**B.   Lonza and IPS Cannot Redact The Prime Contract Because It is Specifically Incorporated Into the Subcontract.**

30.     The Subcontract refers to and incorporates the "Prime Contract," not a redacted version of the Prime Contract.

31.     IPS should not be allowed to incorporate the Prime Contract into the Subcontract, thereby making Fraser responsible for the terms in the Prime Contract, and subsequently provide a redacted version of that document, making it impossible for Fraser to determine the provisions of the very document that IPS incorporated by reference into the Subcontract.

32.     Because the entire Prime Contract is incorporated by reference into the Subcontract, Fraser has a right to review the entire unredacted Prime Contract.

**C.   There is No Absolute Privilege for Trade Secrets or Confidential Information.**

33.     Lonza and IPS argue that the Prime Contract contains proprietary or confidential information.

34.     The information redacted related to basic commercial terms, including payment provisions, retainage, key personnel, and the scope of work.  This is not proprietary or confidential information.

35.     Even if a portion of the redactions contained proprietary or confidential

information, the United States Supreme Court has clearly held that "there is no absolute privilege

for trade secrets and similar confidential information." Fed. Open Mkt. Comm. of Fed. Reserve

Sys. v. Merrill, 443 U.S. 340, 362 (1979); see also Federal Practice & Procedure (Civil), § 2043

(3d Ed. 2011) ("It is well settled that there is no absolute privilege for trade secrets and similar

confidential information; the protection afforded is that if the information sought is shown to be

relevant and necessary, proper safeguards will attend disclosure.   It is for the party resisting

discovery to establish, in the first instance, that the information sought is within this provision of

the rule"); Bear Creek Cranberry Co., LLC v. Cliffstar Corp., No. 10-CV-00770 A M, 2011 WL

2882078, at *3 (W.D.N.Y. July 15, 2011) (holding defendant "may not redact relevant

information from the contracts merely because it is confidential"); see also Olympic Refining

Co. v. Carter, 332 F.2d 260, 265 (9th Cir. 1964), cert. denied, 379 U.S. 900 (1964) ("But neither

Rule 30(b) [now Rule 26(c) ], nor any other rule or statute called to our attention, authorizes a

district court to protect trade secrets and sensitive competitive information from such disclosure

as is relevant to the subject matter involved in a pending action.  All that may be done is to

afford such protection from disclosure as is practicable, consistent with the right of access

thereto for purposes of litigation.")

36.     Here, the information is relevant and Lonza has the burden of establishing a

privilege protecting the redacted information from disclosure.  See F.D.I.C. v. Ogden Corp., 202

F.3d 454, 460 (1st Cir. 2000) (the party resisting discovery bears the burden of establishing an

applicable privilege).  Because there is no privilege for proprietary, confidential information or

trade secrets, Lonza cannot meet its burden.  The entire unredacted Prime Contract should be

immediately produced.

**D.  The Redacted Provisions Are Relevant to the Factual Issues In Dispute Concerning IPS and Lonza's Objection to Fraser's Mechanic's Lien.**

37.     At the time Lonza made redactions to the Prime Contract, it was aware of the arguments presented by Fraser in its Reply and therefore knew that the redacted information was relevant to factual issues in dispute.  Despite this fact, Lonza redacted portions of the Prime Contract that squarely address disputed factual issues.

38.     Each of Lonza's redactions is addressed below:

39.     **§ 1.3 (Page 2) -** Lonza redacted what appears to be a Contract Document or another agreement between Lonza and IPS pertaining to the Project.  As stated above, the entire Prime Contract is incorporated into the Subcontract, not a redacted version of the Prime Contract.  Fraser is bound by the entire Prime Contract, not those portions of the Prime Contract that Lonza and IPS subsequently, and unilaterally, determine should apply.  There is no permissible basis for this redaction.

40.     **§ 2.6.3 (Page 5) –** Lonza redacted the amount it is entitled to deduct from IPS's compensation if IPS assigns its workforce to other projects.  Although it is not clear whether IPS assigned its workforce to other projects or Lonza withheld payment pursuant to this clause, there is no permissible basis for this redaction.

41.     **§ 5.4.5 (Page 12) –** Lonza redacted the amount of retention Lonza may withhold from IPS's monthly payment requisitions for work performed by subcontractors.  This information is directly relevant to how much retainage Lonza has withheld on the Project.  As stated in Fraser's Reply, the amount of retainage withheld by Lonza is likely 5-10% of the total contract sum, which may exceed $50 million.

42.     **§16.7 (Pages 40-41) –** Lonza redacted the notice requirements, which appears to include email addresses of key project participants.  Despite the fact that Lonza alleges that it

had no notice of Fraser's inefficiency claim, Lonza received (and responded) to emails as early as December 2015 concerning Fraser's inefficiency claim.  See Fraser's Hearing Exhibits 1-2 through 1-9.  The designees for notice in the Prime Contract are highly relevant to the issues in dispute.

43.     **Exhibit 1 and 2 (Pages 49-51) –** Lonza redacted portions of the Prime Contract scope of work.  As stated above, the Subcontract incorporates the entire Prime Contract, including the scope of work. Subcontract § 12.1.  There is no permissible basis for redacting the scope of work in the Prime Contract.

44.     **Exhibit 4 (Page 54) –** Lonza redacted the entire project budget.  This information is relevant to determining how much retainage Lonza was allowed to withhold from IPS.  See Fraser's Reply, P.14-15.  The Prime Contract allowed Lonza to retain a portion of IPS's monthly payment requisitions.  Depending on the percentage Lonza was able to withhold (which is currently unknown because Lonza redacted it) and the Project Budget (which Lonza also redacted), Lonza cannot meet its burden of proof showing the amount currently due or which may become due to IPS.

45.     **Exhibit 5** (Pages 55-56) – Lonza redacted the payment terms and the makeup of IPS's compensation.  This information is relevant in determining whether Fraser's claims are "pass through" expenses that Lonza is obligated to pay IPS.  Lonza also redacted the contractor's individual commitments that in excess of such amount would have to be approved in advance by Lonza.  This information is relevant because IPS may have had contractual authority to bind Lonza for payment of the entire amount of Fraser's claim.  Lonza also redacted the amount of retainage withheld by Lonza from IPS**.**  As stated above, this issue is relevant to the amount that is currently due or may become due to IPS.  Finally, Lonza redacted the payment terms for Trade

Work and Site General Conditions. This information is relevant to the amount due or which may become due from Lonza to IPS.  There is no permissible basis for any of these redactions.

46.      **Exhibit 6 (Page 57) –** Lonza redacted IPS's key personnel.  This information is relevant to notice and IPS's directives to Fraser to perform additional work.  There is no basis for these redactions.

47.      **Exhibits 12 and 13 (Pages 64-65) –** Lonza redacted the Contractor's Representative, who is permitted to make binding decisions on behalf of IPS, and Owner's Representative, who is permitted to make binding decisions on behalf of Lonza.  This information is relevant to IPS's directives to Fraser to work overtime and Fraser's notice of its claims to IPS and Lonza.

### III.      COMPLIANCE WITH LOCAL RULES

48.      Pursuant to Local Rule 7.1(c), Fraser submits that it sought an unredacted copy of the Prime Contract from Lonza but that Lonza did not agree to provide one.  See Second Pasakarnis Affidavit.

49.      Undersigned counsel requested that Lonza produce an unredacted copy of the Prime Contract and that Fraser would agree to a confidentiality agreement to preserve any concerns Lonza may have over alleged confidential provisions in the Prime Contract.  Exhibit B to Second Pasakarnis Aff.  Fraser also offered to file the unredacted Prime Contract as a supplement to its hearing exhibits under seal.  Id.

### IV.      REQUEST FOR RELIEF

WHEREFORE, Fraser respectfully requests that this Court;

**A.**  Schedule a hearing regarding Fraser's Motion to Compel; and

**B.** After hearing, compel the Defendants to produce an unredacted copy of the Prime

Contract to Fraser, or in the alternative, require Defendants to submit an

unredacted copy of the Prime Contract to this Court for *in camera* review, and

following such review, require the Defendants to produce an unredacted copy of

the entire Prime Contract, or such portions of the Prime Contract as the Court

deems necessary and just.

Respectfully submitted,

FRASER ENGINEERING COMPANY, INC.

By its attorneys,

Dated:  May 19, 2017

/s/ Seth M. Pasakarnis
Ronald D. Ciotti (#8768)
Seth M. Pasakarnis (#18971)
Hinckley, Allen & Snyder LLP
11 South Main Street, Suite 400
Concord, NH 03301-4846
Telephone: (603) 225-4334

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a copy of the foregoing to be served on all counsel of record through the ECF system on May 19, 2017.


*/s/ Seth M. Pasakarnis*
Seth M. Pasakarnis